## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

UNITED STATES OF AMERICA,    :
    :
    Petitioner,    :
    :
    :  CIVIL ACTION NO.  05-2509 (JCL)
    v.    :
    :
DENNIS MARRA,    :  **MEMORANDUM AND ORDER**
    :
    Respondent.    :

---

Before the Court is the Motion of Respondent Dennis Marra ("Marra")  to stay the enforcement of the summons issued by the Internal Revenue Service ("IRS") as ordered on September 16, 2005.  Marra seeks a stay pending appeal to the Third Circuit of the substantive finding that he has no Fifth Amendment privilege to  resist the summons.  For the reasons expressed below, Respondent's Motion is denied.

## I.     BACKGROUND

On September 12, 2005, Marra and the Government appeared before this Court on an Order to Show Cause ("OTSC") why Marra should not be compelled to obey an IRS summons served on him in the investigation of Kenneth Reiher ("Reiher"). Reiher is being investigated to determine whether he "committed any offense under the internal revenue laws by filing false or fraudulent returns or attempted to evade

or defeat his Federal income taxes for the years 2000, 2001, and 2002." (Chang Dec. ¶ 2)

In the summons issued to Marra on June 18, 2004, the government seeks Marra's appearance to "give testimony . . . and to produce for examination" books, records, papers and other data relating to Reiher personally and two corporate entities owned by Reiher, KVR Consultants, Inc. and Healthcare Management, Inc., and for Statewide Delivery Services, Inc, a corporation owned by Reiher's father-in-law, Joseph Pezzutti.  Specifically, the summons calls for the production of:

> All books, records, bank statements, cancelled checks, deposit tickets, work-papers, financial statements, correspondence and other pertinent documents furnished by or on behalf of the above named client(s) for the preparation of state and federal income tax returns and for any other entity in which either or both of them have a financial interest, including but not limited to:

> All records used in or resulting from the preparation of federal and state income tax returns consisting of but not limited to work-papers, notes, papers, memoranda and correspondence used or prepared by you relative to the preparation of the aforementioned returns.

> Copies of federal and state income and payroll tax returns, state sales tax returns and amended tax returns.

> All records, books of account and other documents or papers relative to financial transactions of the principals.

> All client billing records relative to this client to

> include records disclosing the dates and types of services rendered; client account cards; billing invoices; records reflecting the dates, amounts, purpose, and method of all payments (cash or check); and all correspondence with this client.

The Government contends that Marra is "the accountant, tax preparer and third-party record-keeper" for Reiher and the above named entities. (Petr.'s Mem. 4-5) As such, he is the custodian of corporate records. Thus, the Government argues that Marra has no privilege to withhold the documents it seeks. Marra confirms that he is Reiher's "tax return preparer" but is not a certified public accountant. (Marra Dec. ¶ 1)[1] In subsequent papers, Marra's counsel described him as "more than just a third-

---

[1] The Internal Revenue Code defines third-party recordkeepers as, *inter alios*, "any accountant." 26 U.S.C. § 7603(b)(2)(F). Treasury Regulations state "[a] person is an 'accountant' . . . for the purposes of determining whether that person is a third-party recordkeeper if the person is registered, licensed, or certified under State law as an accountant." Treas. Reg. § 301.7609-2(a). An "income tax return preparer" means any person who prepares, for compensation, all or a substantial portion of a federal tax return or claim for refund. 26 U.S.C. § 7701(a)(36).

The Treasury Regulations describe when third-party recordkeeper status arises:

> In general. A person is a 'third-party recordkeeper' with respect to a given set of records only if the person made or kept the records in the person's capacity as a third-party recordkeeper. Thus, for instance, an accountant is not a third-party recordkeeper (by reason of being an accountant) with respect to the accountant's records of a sale of property by the accountant to another person.

Treas. Reg. § 301-7609-2(b).

party record-keeper." (Resp.'s Br. Supp. Mot. Stay 6)  Marra has declined to produce the books and records, arguing that any such production or attendant testimony could incriminate him, and asserting his Fifth Amendment privilege against self-incrimination as his basis for refusing to obey.

At the OTSC hearing, the Court upheld the summons, ruling that Marra had ten days to produce responsive materials.  The Court issued an Order requiring Marra to "produce the books, papers, records and/or other data as demanded by the summons within ten (10) days of September 16, 2005."  Order of September 16, 2005.  The Order further required Marra to appear and give testimony "with respect to the documents produced." Id.  The Order found that "Dennis Marra does not have a Fifth Amendment privilege to resist the production of documents described in the summons." Id.

On September 20, 2005, counsel for Marra moved to stay the enforcement of the summons pending an appeal of the Court's September 16, 2005 Order to the Third Circuit.

## II.   LEGAL ANALYSIS

To prevail on a motion for a stay pending appeal, the movant must establish: (1) a likelihood of success on the merits; (2) a risk of irreparable injury if the stay is

not granted; (3) an absence of substantial harm to other interested parties; and (4) no harm to the public interest.  ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987).  The elements are discussed below.

**Success on the Merits**

The issue here is whether Marra is a third-party record-keeper or similarly, a custodian of corporate records, to whom a Fifth Amendment privilege is unavailable, or whether he can personally assert a Fifth Amendment privilege in refusing to turn over the books and records of a taxpayer and several corporate entities under investigation by the IRS.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  The Internal Revenue Code makes it a crime to "willfully" assist in the preparation of a false or fraudulent return. 26 U.S.C. § 7206.  Willfulness is present if the tax preparer deliberately falsifies a material statement in the tax return with full understanding of its materiality and with the intent that it should be accepted as true.  A Justice Department referral signals that the IRS recommends criminal prosecution or a grand jury investigation.  26 U.S.C. § 7602(d).  If a referral is in effect, the Government is precluded from issuing or attempting to enforce a summons to examine books and records.  Id.  Here, the Government's papers state clearly that there is no Justice

Department referral in effect.  (Chang Dec. ¶ 21; Pet. to Enforce IRS Summons ¶ 9)

Furthermore, the Government states that

> the [IRS] has not made a recommendation to the Department of Justice for a grand jury investigation or criminal prosecution of Kenneth Reiher for the tax years under investigation.  The [IRS] is not delaying a recommendation to the Department of Justice in order to collect additional information.  Moreover, the Department of Justice has not made any request under 26 U.S.C. § 6103(h)(3)(B) for the disclosure of any return or return information . . . relating to Kenneth Reiher.

(Chang Dec. ¶ 21)  Thus, it appears that there is no "criminal case" open against

Reiher or Marra or even contemplated against either person.  Nonetheless, the Fifth

Amendment has been held to apply to both civil and criminal tax investigations.

United States v. Egenberg, 316 F. Supp. 86, 89 (D.N.J. 1969).

In United States v. Egenberg, the court considered a claim of privilege against

self-incrimination where the IRS issued summonses to respondent Egenberg, an

accountant, who was himself under indictment for alleged illegal conduct arising out

of his work in the tax field.  Id. at 90.  The IRS sought Egenberg's clients' tax and

financial records to determine his personal income tax liabilities.  The IRS testified

that "respondent deposited in his bank account, refund checks issued to respondent's

clients; that respondent allowed some of the clients to use his credit card; that

respondent would loan money to his clients; and that respondent would recommend

a particular broker to take care of his clients' insurance needs." Id. at 89.  These transactions may have led to unreported income taxable to respondent.  Id.  The respondent refused to turn over his clients' records, basing his refusal on the Fifth Amendment privilege against self-incrimination.

It is "well settled that the Fifth Amendment privilege against self-incrimination can be invoked in civil and criminal proceedings, including investigations." Id.  The court specifically recognized that "constitutional claims may be asserted in proceedings under section 7602 of the Internal Revenue Code." Id. (citing Reisman v. Caplin, 375 U.S. 440, 449 (1964) ("[T]he witness may challenge the summons on any appropriate ground.").  Ultimately, the court found that because respondent was under indictment for conduct arising out of his work as an accountant, compelling the production of the documents sought by the IRS might tend to incriminate respondent or lead to incriminating evidence.  Id. at 90.  The court denied the application to enforce the summons.

Egenberg contains some factual similarities with the present case in that Egenberg was an accountant who held records that the IRS wanted to review. However, unlike Marra, Egenberg was (1) the person under investigation by the IRS for tax evasion and (2) already under indictment for bribery of an IRS tax technician. Here, no criminal proceedings have been instituted against either Reiher or Marra.

Section 7602(d) of the Internal Revenue Code establishes a bright-line rule permitting the enforcement of an IRS summons even for the purpose of investigating criminal offenses unless the matter has been referred to the Department of Justice for possible criminal prosecution. Pickel v. U.S., 746 F.2d 176, 184 (3d Cir. 1984) ("A summons is now enforceable if it is issued in good faith, i.e., if it is for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws, and if it is issued before there is a Justice Department referral."). However, Marra continues to argue that because Reiher is being investigated by the criminal division of the IRS for tax fraud, he fears that complying with the summons could lead to incriminating evidence that may be used against him personally.

In re Grand Jury Empaneled on April 6, 1993, 869 F. Supp. 298 (D.N.J. 1994), the district court discussed at length the Fifth Amendment as it applies to corporations and other collective entities. That case involved the Government's attempt to compel the respondent, a custodian of corporate records, to appear and testify before a grand jury as to the corporation's alleged mail fraud. The respondent was himself a target of the investigation at the time the grand jury subpoena was issued. The district court articulated the issue before it, one of first impression in this Circuit, as "whether compelled business records testimony is (i) implicit in and auxiliary to the required production of documents and therefore not violative of the

Fifth Amendment; or (ii) independently incriminating and therefore proscribed by the Fifth Amendment." Id. at 299. The court ultimately concluded that compelled business records testimony would violate respondent's Fifth Amendment rights. Id. at 300.

Factually, this case is similar to Marra's situation. According to the IRS, Marra holds financial and tax-related records of the three corporate entities under investigation, as well as Reiher's personal records. Marra was requested to appear and give testimony and to produce books and records related to the preparation of Reiher's federal income tax returns. However, unlike Grand Jury Empaneled on April 6, 1993, Marra is not the target of the IRS's investigation at this time.

To begin the analysis, the district court noted that "a corporation has no Fifth Amendment privilege to refuse to produce its records." Id. The court stated that "[u]nder the collective entity rule as authoritatively pronounced in Braswell, a custodian of records may not invoke the Fifth Amendment to avoid producing the documents of a collective entity that are in his custody, even where production of those documents would be personally incriminating." Id. at 301; Braswell v. United States, 487 U.S. 99, 108-09 (1988) ("The plain mandate of these decisions is that without regard to whether the subpoena is addressed to the corporation, or as here, to the individual in his capacity as a custodian . . . a corporate custodian . . . may not

resist a subpoena for corporate records on Fifth Amendment grounds.") (internal citations omitted).  Ultimately, on the issue of production of documents, the district court found that the application of the collective entity rule in <u>Braswell</u> foreclosed any argument that production of documents cannot be compelled because it would personally incriminate respondent.  <u>Id.</u> at 301.

Courts apply the collective entity doctrine to officers, current employees, and agents of corporations.  Section 7602 of the Internal Revenue Code specifically authorizes the Government to summon "any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax . . . ."  26 U.S.C. § 7602(a)(2).  Accordingly, this Court finds that Marra is a custodian of corporate records because he is a "person having possession, custody, or care" of the books and records pertaining to Reiher and the three corporations at issue.  The <u>Braswell</u> Court recognized that "corporations act only through their agents, . . . and a custodian's assumption of his representative capacity leads to certain obligations, including the duty to produce corporate records on proper demand by the Government."  <u>Braswell</u>, 487 U.S. at 110.

Turning to the issue of oral testimony, the district court further recognized that "[t]he collective entity rule also requires that the custodian identify or authenticate, by oral testimony, the documents produced pursuant to the subpoena."  <u>Grand Jury</u>

-10-

Empaneled on April 6, 1993, 869 F. Supp. at 301.  As to this prong of the analysis, the court explained that Supreme Court precedent mandated that "a custodian can be compelled to provide limited oral testimony" – limited in the sense that "a corporate officer was required to produce corporate  records and merely identify them by oral testimony." Id. at 302 (quoting Braswell, 487 U.S. at 114).  However, the court acknowledged that Fifth Amendment issues will arise where the Government seeks to compel the custodian to do more than identify documents already produced. Id.  For example, where the Government requires testimony on the whereabouts of missing books or records, or requires the custodian to name the persons in whose possession the missing books may be found, the Fifth Amendment is violated. Id.  As to the issue of testimony, the Government readily admits that Marra can assert a Fifth Amendment privilege to a "specific question, or if he is asked about something beyond his custody of the documents or their authenticity." (Letter from Genis to the Court of September 15, 2005) (citing United States v. Raniere, 895 F. Supp. 699, 704 (D.N.J. 1995) ("A blanket or general assertion of a Fifth Amendment privilege to resist enforcement of an IRS summons is insufficient as a matter of law.  Rather a taxpayer must specifically assert the Fifth Amendment privilege with respect to individual requests.")).

However, another line of Supreme Court cases holds that "the act of producing documents in response to a subpoena may have a compelled testimonial aspect."

United States v. Hubbell, 530 U.S. 27 (2000); see also United States v. Doe, 465 U.S. 605 (1984); Fisher v. United States, 425 U.S. 391 (1976).  Thus, despite Braswell, some uncertainty exists as to whether a custodian of corporate records can be compelled to testify.  Marra relies heavily on Hubbell.

In Hubbell, respondent Webster Hubbell was subpoenaed by Independent Counsel to produce documents and to testify before a grand jury in order to determine whether he had in fact provided full and complete answers to the Whitewater investigation, pursuant to a prior plea agreement.[2] Hubbell, 530 U.S. at 30.  Hubbell appeared before the grand jury and invoked his Fifth Amendment privilege against incrimination.  Id. at 31.  At that point, pursuant to 18 U.S.C. § 6002, the district court ordered him to respond.  Id.  Section 6002 provides for immunity if a court directs the witness to answer.  Id. at 30 n.2.  Thus, "no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury . . . ."  Id. (citing 18 U.S.C § 6002).  Based on this grant of immunity, Hubbell released thousands of pages of documents, which ultimately led

_____

[2] Hubbell was previously prosecuted, pled guilty, and served a jail sentence for violations of federal mail fraud and tax evasion arising out of his billing practices as to Whitewater Redevelopment Corp.  As part of the plea agreement, he promised to provide complete and truthful information about matters relating to the Whitewater investigation.

to this second prosecution for tax-related issues.  Id. at 31.

The district court, characterizing the subpoena as a "quintessential fishing trip," dismissed the second indictment.  Id. at 32.  The Court of Appeals for the District of Columbia Circuit vacated the judgment and remanded for further proceedings to determine the extent and detail of the Government's knowledge of Hubbell's financial affairs on the date the subpoena was issued.  Id.  The Government was required to prove with reasonable particularity its prior awareness.  Id. at 32-33.  On remand, Independent Counsel acknowledged that he could not satisfy the standard set by the appellate court and conditionally agreed to dismiss the indictment unless the Supreme Court ruled otherwise.  Id. at 33.

The Supreme Court granted certiorari "in order to determine the precise scope of a grant of immunity with respect to the production of documents in response to a subpoena."  Id. at 34.  Commencing the analysis with several settled propositions, the Court first reiterated that "a person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those documents was not 'compelled' within the meaning of the privilege."  Id. at 35-36 (citing Fisher v. United States, 425 U.S. 391 (1976) (holding that voluntarily prepared work papers used in the preparation of tax returns are not protected by the Fifth Amendment, only the act of production is safeguarded).  Based on the Fisher

premise, Supreme Court found that Hubbell could not avoid compliance with the subpoena merely because the documents demanded contained incriminating evidence, whether written by others or voluntarily prepared by him. Hubbell, 530 U.S. at 36.

The Court then turned to a second settled principle, arguably a conflicting one, that "the act of production itself may implicitly communicate statements of fact." Id. Where a custodian of documents responds to a subpoena, he may be compelled to answer questions under oath designed to determine whether all responsive documents have been produced. Id. at 37. When this occurs, the Court found that "the answers to those questions, as well as the act of production itself, may certainly communicate information about the existence, custody, and authenticity of the documents." Id. "Compelled testimony that communicates information that may lead to incriminating evidence is privileged, even if the information itself is not inculpatory." Id. at 38.

After expressing these competing principles, the Hubbell Court narrowed its focus to the issue before it in order to address "the Fifth Amendment's protection against the prosecutor's use of incriminating information derived directly or indirectly from the compelled testimony of the respondent." Id. Hubbell produced countless documents in response to the subpoena which, for example, broadly requested "any and all documents reflecting, referring or relating to any direct or indirect sources of money or other things of value received by or provided to" Hubbell or his family

-14-

members during a three-year period.  Id. at 41 (emphasis added).  The Supreme Court likened the broad production of material to a witness's preparation of an answer to either a detailed written interrogatory or a series of oral questions at a discovery deposition.  Id. at 41-42.  "It is apparent from the text of the subpoena itself that the prosecutor needed respondent's assistance both to identify potential sources of information and to produce those sources."  Id. at 41.

The Government's use of these documents eventually led to the return of an indictment on charges that were unrelated to the original plea agreement.  Id. at 42.  The Court found it undeniable that Hubbell's act of producing the documents, of making "extensive use of the contents of his own mind in identifying the documents responsive to the requests in the subpoena," id. at 43, was the first step in a chain of evidence that led to his prosecution, id. at 42.  Simply stated, without Hubbell's assistance the Government would not have learned of other instances of tax evasion for which Hubbell was subsequently prosecuted.   The indictment was dismissed.

Marra argues in this connection that the act of producing documents and records responsive to the IRS summons relating to Reiher and the corporate entities could incriminate him based on the reasoning in Hubbell that the thought-processes necessary for selecting documents responsive to the subpoena could be construed as compelled testimony. In an attempt to align his objections with Hubbell, Marra

expressly takes issue with the summons' language requiring "all records . . . used or prepared by you relative to the preparation of the aforementioned returns;" "all records . . . relative to financial transactions of the principals"; and "all client billing records relative to this client . . . ."

The facts in Hubbell distinguish it from Marra's case.  First, Hubbell was the one under investigation and compelled to testify before a grand jury.  Second, Hubbell was asked to produce his own personal records, not those of other corporate entities. Finally, the prosecutor in Hubbell had no independent knowledge of Hubbell's wrongdoings or the existence of documents supporting it until he received Hubbell's assistance and compliance with the subpoena.  Here, Marra is not under investigation; apart from Marra's billing records, he is not being asked to produce personal documents; and the Government presumably knows that Reiher and the corporations filed tax returns.  The IRS's attempt to check Reiher's personal and corporate tax returns for accuracy against books, records, bank statements, and other supporting papers is not the same as a "fishing expedition" commenced to confirm whether Hubbell was in violation of his plea agreement.

At the OTSC hearing and again in the papers submitted with the Motion to stay, Marra contends that Judicial Watch Inc. v. U.S. Dep't of Commerce, 196 F.R.D. 1 (D.D.C. 2000), further supports his arguments based on Hubbell.  In this case, plaintiff

Judicial Watch filed a Freedom of Information Act ("FOIA") request for the production of documents from non-party witness Yah Lin Trie ("Trie") in an attempt to show that Trie was a principal actor in the illegal sale of seats on various Department of Commerce trade missions.  Judicial Watch, 196 F.R.D. at 1.  Trie had previously pled guilty to one count of making a false statement to the Federal Election Commission and one count of making an election contribution in the name of another. Id.  The subpoena duces tecum directed to Trie called for "any and all documents and things that refer or relate in any way to the Department of Commerce Secretarial trade missions."  Id. at 3.  The district court found that a response to this request would be compelled testimony under Hubbell, reasoning that

> [a]side from attesting to the authenticity and source of any documents he produced, by responding to such a broad request, Trie would be called upon to conclude whether a document "relates to" the various subject categories. In doing so, Trie might determine that a document "relates to" Department of Commerce trade missions, while, on its face, the document does not refer to or make any mention of – direct or oblique – the Department of Commerce trade missions. . . .  [T]he testimony sought by Judicial Watch could reasonably implicate Trie in other crimes to which he has not pled guilty and for which the statute of limitations has not run.

Id.

Again, the Judicial Watch situation is wholly different from that of Marra's.  It is clear that the IRS summons seeks whatever documents Marra has that were used in

the preparation of the tax returns at issue.  The IRS is not asking Marra to make qualitative determinations about relational aspects of documents.  The IRS has authority to audit taxpayers by comparing returns with supporting documentation. The IRS's requests for production here are tailored to accomplish its investigation of Reiher's potential tax liability such that comparison to the broadly worded requests in Hubbell and Judicial Watch is inappropriate.  Furthermore, there is no Justice Department referral in place.  Marra is not under investigation, and as far as we know, has never pled guilty to willfully assisting in the preparation of false tax returns.  An application of Hubbell in this context would strip the IRS of its ability to enforce the tax laws.

However, assume arguendo, that, in preparing Reiher's tax returns, Marra engaged in some alleged wrongdoing, in a situation where the Fifth Amendment might attach.  Indeed, Marra's argument has seemingly evolved in this direction.  Now Marra suggests that the papers and work product that the Government seeks belong to him personally.  (Resp. Br. Supp.  Mot. Stay  4)  To this, the Government responds that Marra has not validly invoked the privilege against self-incrimination, because he has not appeared in response to the summons, with documents in hand, to assert the privilege on an question-by-question basis.  See Hubbell, 530 U.S. at 31.  Marra contends that he did attempt to properly invoke his privilege when his counsel wrote

to Special Agent Chang on August 5, 2004 and again on December 3, 2004 to request that a date be set for Marra's official invocation.   (Fettweis Dec. ¶ 2, Ex. A) Inexplicably, the Government never responded to either request.  (Id. ¶ 3)

The privilege against self-incrimination extends to protect the private papers and personal effects of the person asserting it.  United States v. White, 322 U.S. 694, 699 (1944).  In U.S. v. Raniere, *supra*, the district court stated that "a taxpayer seeking the protection of the Fifth Amendment to avoid compliance with an IRS summons must provide more than mere speculative, generalized allegations of possible tax-related prosecution. . . .  The taxpayer must be faced with substantial and real hazards of self-incrimination."  Raniere, 895 F. Supp. at 704-05.  This statement obviously applies to the taxpayer, but it could apply in Marra's case as well.  In Raniere, the court outlined several pre-Braswell cases where the Third Circuit remanded the matter to develop the record regarding a corporate custodian's claim of privilege.  However, as explained above, Braswell makes the line as to custodians of corporate records much brighter.  A custodian of corporate records cannot assert the privilege against self-incrimination with regard to the production of corporate records, but may assert the Fifth Amendment on a question-by-question basis with regard to any attendant testimony.  See Raniere, 895 F. Supp. 706-07; cf. United States v. Allshouse, 622 F.2d 53, 56 (3d Cir. 1980) (stating that specific assertion of the privilege serves the dual

-19-

purpose of permitting the court to make an assessment whether the privilege is justified and preventing the taxpayer from using the privilege as a shield for unprivileged evidence of wrongdoing).

The Government asserts that the "Fifth Amendment privilege is not applicable when records are in the possession of a third party." (Petr.'s Letter Br. in Reply to Mot. to Enforce Summons 2) (citing Couch v. United States, 409 U.S. 322 (1973)). In Couch, the taxpayer attempted to prevent her accountant from complying with an IRS summons to produce her books and records in connection with an investigation into her tax liability. Couch, 409 U.S. at 323. The Supreme Court held that the taxpayer could not assert a Fifth Amendment privilege to prevent her accountant's compliance with the summons. In language that supports Marra's position more so than the Government's, the Couch Court stated that "[t]he summons and the order of the District Court enforcing it are directed against the accountant. He, not the taxpayer, is the only one compelled to do anything. And the accountant makes no claim that he may tend to be incriminated by the production." Id. at 329. In the present case, Marra has made the general claim that producing the books and records may incriminate him.

A blanket or general assertion of a Fifth Amendment privilege is improper. Instead, an individual claiming the privilege must appear and raise the privilege with

respect to each question posed and each document sought.  Even though (by ignoring his letters), the Government deprived Marra of the opportunity to invoke the privilege in this manner, this Court gave him that opportunity by its Order of September 16, 2005.  Compliance with that Order would have enabled the Court to examine and assess the basis for his assertion of the privilege.  Absent such compliance, including identification of the basis for assertion of the privilege as to a particular question, the Court cannot determine the likelihood of success on the merits on this motion to stay, a matter on which Respondent bears the burden.  As the first prong of the analysis of the motion to stay is undeterminable, it is unnecessary to consider the others at this juncture.  Respondent's motion to stay enforcement of the IRS summons must be denied.

Accordingly, **IT IS** on this 5th day of October 2005

**ORDERED** that Respondent's Motion to stay enforcement of the IRS Summons is denied; and **IT IS**

**FURTHER ORDERED** that on or before October 11, 2005, or on such other date as is agreed to by the parties, the parties shall meet and shall comply with this Court's Order of September 16, 2005.

/s/ John C. Lifland, U.S.D.J.

-21-